# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLINZO FLOWERS, | CASE NO. CV F 09-0051 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12(b)(6) MOTION TO DISMISS** |
| vs. | (Doc. 5.) |
| COUNTY OF FRESNO, et al, | |
| Defendants. | |

## INTRODUCTION

Defendants County of Fresno ("County") and nine County Sheriff's Department ("Department") peace officers[1] seek to dismiss plaintiff Rolinzo Flowers' ("Mr. Flowers'") excessive force, false arrest, unlawful search and related claims as lacking necessary elements and for further deficiencies. Mr. Flowers filed no timely papers to oppose dismissal of his claims. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 27, 2009 hearing, pursuant to Local Rule 78-230(c), (h). For the reasons discussed below, this Court GRANTS defendants F.R.Civ.P. 12(b)(6) relief and DISMISSES many of Mr. Flowers' claims.

---

[1] The peace officer defendants are County Sheriff Margaret Mims ("Sheriff Mims"), Department Deputies Ryan Hushaw ("Deputy Hushaw"), Daniel Buie ("Deputy Buie"), Randall Swiney ("Deputy Swiney") and Robert Buenrostro ("Deputy Buenrostro"), and Department Sergeants Kevin Smith ("Sgt. Smith"), Kathy Carreiro ("Sgt. Carreiro"), John Golden ("Sgt. Golden"), and Arley Terrance ("Sgt. Terrance"). The nine peace officer defendants will be referred to collectively as the "peace officer defendants." The County and the peace officer defendants will be referred to collectively as "defendants."

1

# BACKGROUND[2]

## The Parties

Mr. Flowers is a former Sacramento County Sheriff's Department deputy and resides in Fresno County.

The peace officer defendants are employed by the Department. Sgt. Smith is Deputy Hushaw's immediate supervisor. Sgt. Carreiro is Deputy Swiney's immediate supervisor. Sgt. Golden is Deputy Buie's immediate supervisor. Sgt. Terrance is Deputy Buenrostro's[3] immediate supervisor.

## Mr. Flowers' Response To Potential Burglar

Mr. Flowers' brother is a gang enforcement officer with the Fresno Police Department, and Mr. Flowers and his brother share a similar appearance. Mr. Flowers has experienced problems with gang members mistaking him for his brother and obtained a restraining order from the Fresno County Superior Court.

On January 9, 2007 after 11 p.m., Mr. Flowers heard a loud crash from his garage and left his home with his legally owned handgun to investigate. Mr. Flowers found the garage's side door open and a trash can of aluminum cans toppled. Mr. Flowers went outside the garage to check for burglars and observed a man similar in appearance to a man identified in the restraining order. Mr. Flowers entered his vehicle to check for damage and to retrieve his cell phone.

## Mr. Flowers' Arrest

In response to a call of a suspicious person by Mr. Flowers' neighbor, Deputy Hushaw observed Mr. Flowers sitting in his vehicle near the area where the suspicious person had been seen. Deputy Hushaw got out of his patrol car, and Mr. Flowers asked if Deputy Hushaw was investigating a burglary. Mr. Flowers told Deputy Hushaw that a suspect who resembled the man under the restraining order had been in his garage.

Deputy Hushaw accused Mr. Flowers of ringing doorbells in the neighborhood in that a neighbor

---

[2] The factual recitation is derived generally from Mr. Flowers' operative complaint ("complaint") filed on January 8, 2009.

[3] Although the complaint identifies Deputy Buenrostro as a detective, defendants refer to him as a deputy. For the purposes of this order, this Court will defer to the title to which defendants refer to Deputy Buenrostro.

a few doors down from Mr. Flowers' home had reported that a thin black 5-foot-3 man weighing 150-160 pounds had rung her doorbell twice and walked across her lawn. At the time of incident, Mr. Flowers stood six-foot-three and weighed 275 pounds.

Mr. Flowers denied Deputy Hushaw's repeated accusations that Mr. Flowers had rung doorbells. Deputy Hushaw ignored Mr. Flowers' repeated requests to investigate the burglary. Mr. Flowers informed Deputy Hushaw that Mr. Flowers was the vehicle's registered owner, that he lived at the residence, but lacked identification in that he "was just checking on a prowler."

Mr. Flowers became angered, and Deputy Hushaw told Mr. Flowers to exit his vehicle as Mr. Flowers was under arrest. Mr. Flowers reaffirmed his status as a former deputy and told Deputy Hushaw that Mr. Flowers had his handgun on his lap.

Near that time, Deputies Swiney and Buie arrived at the scene. As Mr. Flowers exited his vehicle, he allowed his handgun to slide off his lap onto the vehicle's floorboard. After Mr. Flowers exited his vehicle, Deputy Hushaw handcuffed Mr. Flowers and used force on Mr. Flowers' left wrist such that Deputy Hushaw "grunted when he clamped the cuff down."

Deputy Swiney placed Mr. Hushaw in the rear of a patrol car. Since the handcuffs had not been locked, they clamped tighter to cause Mr. Flowers great pain. After a few minutes, Deputy Buie came to the patrol car's window and denied Mr. Flowers' request to loosen the handcuffs. Deputy Swiney also denied Mr. Flowers' later request to loosen the handcuffs.

The deputies searched the trunk of Mr. Flowers' vehicle. Mr. Flowers was confined to the partrol car for more than 50 minutes and claims permanent nerve damage to his left forefinger and wrist from the excessively tight handcuffs.

Throughout the initial contact with Mr. Flowers, Deputy Hushaw, a K9 officer, held the remote for his K9 door to cause Mr. Flowers to feel detained, fearful for his safety and subject to K9 release.

Sgt. Smith arrived on the scene, witnessed events and later signed off on Deputy Hushaw's report to authorize Deputy Hushaw's actions.

### **Mr. Flowers' Alleged Injuries**

Mr. Flowers claims that due to defendants' conduct, Mr. Flowers suffered/experienced:

1. Damage to his hand and wrist;

3

2. Severe emotional distress to cause a massive heart attack to prevent employment in his field;
3. Denied employment opportunities; and
4. Irreparable harm to his reputation and standing in law enforcement.

### Mr. Flowers' Criminal Prosecution

Mr. Flowers was charged with violation of a concealed, loaded weapon. His initial trial culminated with an October 26, 2007 hung jury. Mr. Flowers' charges were dropped on October 8, 2008 after an attempt to re-try him.

### Mr. Flowers' State Tort Claims

Mr. Flowers filed state tort claims with the Fresno County Board of Supervisors on January 9, 2008 and August 19, 2008, and each claim was denied.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Standards

Defendants seek to dismiss Mr. Flowers' official capacity, excessive force, false arrest, unlawful search, conspiracy and state tort claims as redundant, lacking necessary elements or time barred.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreoever, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

Defendants seek to dismiss Mr. Flowers' state law claims as time barred. A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978). If the limitations defense is not apparent on the complaint's face and the motion to dismiss is not accompanied by acceptable affidavits, an appropriate summary judgment motion may be employed. *Jablon*, 614 F.2d at 682.

With these standards in mind, this Court turns to defendants' challenges to Mr. Flowers' claims.

**Official Capacity**

The complaint alleges against defendants 42 U.S.C. §§ 1983 ("section 1983") and 1985(3)

("section 1985(3)") claims which will be addressed more specifically below. The peace officer defendants seek dismissal of the section 1983 and 1985(3) claims in their official capacities given that the County is a defendant.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-472, 105 S.Ct. 873 (1985)). Such an action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099.

Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018. "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F.Supp. at 204. As the district court in *Luke*, 954 F.Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

There are no grounds to maintain the section 1983 and 1985(3) claims against the peace officer defendants in their official capacities given that the County is a defendant. The complaint's section 1983 and 1985(3) claims are dismissed against the peace officer defendants in their official capacities.

///

**Absence Of Direct Participation**

Sheriff Mims, Sgts. Carriero, Golden and Terrance, and Deputy Buenrostro challenge the absence of allegations of their direct participation to violate Mr. Flowers constitutional rights or to support state law claims.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633.

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Sheriff Mims, Sgts. Carriero, Golden and Terrance, and Deputy Buenrostro argue that the

complaint fails to link them "with an affirmative act of omission that demonstrates a federal civil rights violation."

Deputies Hushaw, Swiney and Buie and Sgt. Smith are the focus of the complaint's excessive force, false arrest and unlawful search claims. The complaint lacks allegations that Sheriff Mims, Sgts. Carreiro, Golden and Terrance, and Deputy Buenrostro participated in any way in Mr. Flowers' alleged constitutional or state law related wrongs. Mr. Flowers makes to attempt to oppose dismissal of Sheriff Mims, Sgts. Carreiro, Golden and Terrance, and Deputy Buenrostro or to attempt to amend to assert claims against them. As such, Sheriff Mims, Sgts. Carreiro, Golden and Terrance, and Deputy Buenrostro are entitled to dismissal of all of Mr. Flowers' claims against them.

**State Tort Claim Requirements**

Defendants note that although the complaint appears to allege uncertain California law claims, such potential claims are barred for failure to timely present a state tort claim to comply with the commonly referred to California Tort Claims Act, Cal. Gov. Code, §§ 810, et seq.

The California government claims statutes require timely filing of a proper claim as condition precedent to maintenance of an action. Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971). California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action." Government Code section 945.6(a)(1) requires a claimant to file a civil action within six months after the public agency issues its decision. *Javor v. Taggart*, 98 Cal.App.4th 795, 804, 120 Cal.Rptr.2d 174 (2002).

The claims procedures applicable to actions against public employees are the same for actions against public entities. Cal. Gov. Code, §§ 950-950.6. Compliance with the claims statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation

requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *State v. Superior Court,* 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004).

The complaint alleges that Mr. Flowers' encounter with Deputies Hushaw, Swiney and Buie and Sgt. Smith was on January 9, 2007. The complaint further alleges that Mr. Flowers filed claims with the Fresno County Board of Supervisors on January 9, 2008 and August 19, 2008, more than six months after Mr. Flowers' detention. Moreover, Mr. Flowers delayed to file this action until January 8, 2009, more than six months after the January 25, 2008 denial of his initial state tort claim.

Mr. Flowers does not challenge that his state claims are time barred, and such conclusion appears from the complaint's face. As such, the complaint's state claims are subject to dismissal.

## **Excessive Force**

The complaint's (first) cause of action alleges: "One or more of the defendants violated Plaintiff's right to be free from excessive force under the Fourth Amendment to the United States Constitution and under California Penal Code § 149 by unlawfully and maliciously cuffing his hands with sufficient force to cause permanent nerve damage."

### *Sgt. Smith*

Sgt. Smith faults the first (excessive force) cause of action's failure to allege facts to "implicate" him in conduct related to handcuffing Mr. Flowers.

In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989), the United States Supreme Court determined that section 1983 excessive force claims are addressed under the Fourth Amendment's reasonableness standard:

> [A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Excessive force is that which "was not 'objectively reasonable' in light of the facts and circumstances confronting the officer." *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002). In *Graham*, 490 U.S. at 396-397, 109 S.Ct. 1865, the United States Supreme Court provided guidance on reasonableness of use of force:

9

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. (Citations omitted.)

The complaint alleges that Deputy Hushaw handcuffed Mr. Flowers and placed him into the patrol car where the handcuffs tightened. The complaint further alleges that Deputies Swiney and Buie denied Mr. Flowers' requests to loosen the handcuffs. The complaint is silent as to Sgt. Smith's alleged excessive force to warrant dismissal of the first cause of action against Sgt. Smith.

### *California Penal Code Section 149*

Defendants argue that the first (excessive force) cause of action's reference to California Penal Code section 149 is meritless as that statute does not establish an independent tort. Defendants point to the absence of authority for "a damages claim directly under any provisions of the California Penal Code."

California Penal Code section 149 provides:

> Every public officer who, under color of authority, without lawful necessity, assaults or beats any person, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment.

California Penal Code section 149 provides only criminal punishment, not a private right of action for damages. This Court is unaware of any grounds for a private right of action arising from a penal code section. In *Vikco Ins. Services, Inc. v. Ohio Indem. Co.,* 70 Cal.App.4th 55, 62-63, 82 Cal.Rptr.2d 442 (1999), the California Court of Appeal explained:

> Such a private right of action exists only if the language of the statute or its legislative

10

history clearly indicates the Legislature intended to create such a right to sue for damages. If the Legislature intends to create a private cause of action, we generally assume it will do so " 'directly[,] ... in clear, understandable, unmistakable terms ....' [Citation.]" (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-295 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*); see also *Crusader Ins. Co. v. Scottsdale Ins. Co.*, supra, 54 Cal.App.4th at pp. 125-137 [because a judge may not insert what has been omitted from a statute, legislative intent alone determines whether a statute creates a new private right to sue]; *Schaefer v. Williams* (1993) 15 Cal.App.4th 1243, 1248 [19 Cal.Rptr.2d 212] [nothing in Elections Code creates a private cause of action to enforce a pledge to follow fair campaign practices; "Surely, if the Legislature had intended to create such a private action, it would have done so by clear and direct language"]; *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1444-1445 [2 Cal.Rptr.2d 683] [absent some express provision for civil liability, courts cannot assume a private cause of action for negligence may be brought any time a legislative enactment is violated].)

California Penal Code section 149 does not substantiate a private right of action to warrant dismissal of Mr. Flowers' claim based on that statute.

**False Arrest**

The complaint's second (false arrest) cause of action alleges: "One or more of the defendants violated Plaintiff's right to be free from arrest without probable cause by arresting Plaintiff without any probable cause and ignoring his attempts to explain the situation."

Defendants contend that the complaint alleges sufficient facts for probable cause to arrest Mr. Flowers.

The facts of a detention must be viewed in the context of the totality of circumstances in that "the scope of the intrusion permitted [by the Fourth Amendment] will vary to some extent with the particular facts and circumstances of each case." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (plurality opinion); *see Gallegos*, 308 F.3d at 991. A court looks at the situation as a whole and does not isolate each fact "in a vacuum." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995); *see Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002).

"The 'reasonableness' and hence constitutionality of a warrantless arrest is determined by the existence of probable cause." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). The "question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question' that should be determined by the district court at the earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)).

11

The "crucial inquiry" is whether there was "probable cause to make the arrest." *Barry*, 902 at 772; *see McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984). Whether an arrest is "constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Barry*, 902 F.2d at 773 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979)).

Defendants point to the complaint's allegations that Mr. Flowers told Deputy Hushaw that Mr. Flowers had a handgun in the car and that after Deputies Swiney and Buie arrived at the scene, Mr. Flowers "got out of the car, and as he did, he let the handgun slide off his lap into the floorboard." Defendants note California Penal Code section 12031(a)(1)'s prohibition to carry a loaded firearm "in a vehicle in any public place or on any public street." Defendants also point to California Penal Code section 12025(a), which prohibits carrying a concealed within a vehicle "any pistol, revolver, or other firearm capable of being concealed upon the person." Defendants note the absence of dispute that Mr. Flowers' handgun was loaded and concealed within his vehicle given that the complaint alleges that Mr. Flowers needed to tell Deputy Hushaw of the handgun's presence. Defendants conclude "there were sufficient facts that would lead a prudent person to conclude there was a fair probability plaintiff had committed a crime."

Defendants are correct that the complaint pleads facts to support probable cause to arrest Mr. Flowers. The face of the complaint reveals no less than Mr. Flowers' potential violations of California Penal Code sections 12031(a)(1) and 12025(a). Mr. Flowers offers nothing to question probable cause for his arrest and in turn dismissal of the second cause of action.

**Unlawful Search**

The complaint's third (unlawful) search cause of action alleges: "One or more of the defendants violated Plaintiff's right to be free from unreasonable search and seizure by arresting Plaintiff without

any probable cause and searching the trunk of his car without reasonable suspicion of wrongdoing, probable cause, or a warrant."

Defendants argue that exceptions to the warrant requirement defeat Mr. Flowers' unlawful search claims. Defendants initially point to the "plain view" doctrine.

The plain view doctrine is an exception to the general rule that warrantless searches are presumptively unreasonable. *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306 (1990). Pursuant to the plain view doctrine, the Fourth Amendment does not prohibit warrantless seizure of evidence in plain view even though the discovery of the evidence was not inadvertent. *Horton*, 496 U.S. at 130, 110 S.Ct. at 2304. As the U.S. Supreme Court explained in *Horton*, 496 U.S. at 139, 110 S.Ct. at 2309, if a police officer "has a valid warrant to search for one item and merely suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first."

Defendants further rely on the "automobile exception" to the warrant requirement by which law enforcement "may conduct a warrantless search of a vehicle if they have probable cause to believe that it contains contraband." *United States v. Pinela-Hernandez*, 262 F.3d 974, 977-978 (9th Cir. 2001), *cert. denied*, 535 U.S. 1120, 122 S.Ct. 2347 (2002). The rationale for the automobile exception are: (1) "the expectation of privacy in one's vehicle is less than in one's home"; and (2) "the mobility of vehicles necessitates faster action on the part of law enforcement officials." *Pinela-Hernandez*, 262 F.3d at 978. Probable cause for a search requires "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1983); *see also Wartson v. United States*, 400 F.2d 25, 27 (9th Cir.1968) ("Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (citation and internal quotation marks omitted)).

Moreover, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860 (1981). The right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll v. United States*, 267 U.S. 132, 158, 45 S.Ct. 280, 287 (1925) and, to an extent depending on the

13

circumstances of the case, to the place where he is arrested, *Marron v. United States*, 275 U.S. 192, 199, 48 S.Ct. 74, 77 (1927); *Agnello v. United States*, 269 U.S. 20, 30, 46 S.Ct. 4, 5 (1925).

Defendants argue that based on plain view of Mr. Flowers' handgun, "there clearly was probable cause to search the remainder of the car for other firearms, ammunition, etc."

Similar to probable cause to arrest Mr. Flowers, probable cause to search Mr. Flowers' vehicle is apparent on the complaint's face. According to the complaint, Mr. Flowers had his handgun with him in his vehicle and admitted to its presence. The search warrant exceptions noted by defendants defeat Mr. Flowers' unreasonable search and seizure claims to warrant their dismissal. Moreover, the complaint fails to allege seizure of items, other than the handgun, to implicate wrongly Mr. Flowers in a crime or to cause him damage otherwise.

## **Conspiracy**

The complaint's (sixth) conspiracy cause of action alleges that no less than two defendants by reason of "animus" against Mr. Flowers conspired to deny Mr. Flowers "equal protection of the laws, and to subject Plaintiff's person and property to unlawful search, seizure and criminal prosecution" and to further violate his rights by "filing, reviewing, and/or authorizing police reports which contain false, incriminating information."

Defendants criticize as insufficient the "bare allegations that 'two or more' defendants were part of a conspiracy to violate plaintiff's constitutional rights."

The (sixth) conspiracy cause of action references section 1985(3).[4] 42 U.S.C. § 1985 proscribes

---

[4] Section 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or

14

conspiracies to interfere with certain civil rights. A 42 U.S.C. § 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). A conspiracy occurs only when the parties have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575 (1946).

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).

Congress did not intend to create a general federal tort law by the passage of section 1985(3). *Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976.) "[T]o effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus." *Western Telecasters*, 415 F.Supp. at 33 (section1985(3) should not be interpreted to encompass all discrimination between classes of persons, and a claim of discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under section 1985(3)).

A section 1983 civil rights conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988). "Section 1983 is based upon the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color

---

deprivation, against any one or more of the conspirators.

15

of state law." *Gillespie*, 629 F.2d at 641.

Defendants further take issue with the (sixth) conspiracy cause of action's reference to California Penal Code sections 118.1 (prohibiting false peace officer reports) and 182 (prohibition of conspiracy) in the absence of authority to pursue civil damages claims under these criminal statutes.

At best, the complaint alleges merely a conspiracy without factual specificity of, among other things, a common design. The complaint fails to identify conspiracy members and to explain how civil rights were deprived through a conspiracy motivated by racial or other class-based animus. The complaint lacks reference to an identified, meaningful act to further the conspiracy. The complaint's over-generalized conspiracy claims are insufficient, and Mr. Flowers appears to concede as much in the absence of timely opposition to dismiss conspiracy claims. Moreover, as explained above, the complaint's reference to California penal statutes does not provide for a private right of action. Without more, Mr. Flowers' conspiracy claims are subject to dismissal.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES section 1983 and 1985(3) claims against the peace officer defendants in their official capacities;
2. DISMISSES with prejudice all claims against Sheriff Mims, Sgts. Carreiro, Golden and Terrance, and Deputy Buenrostro;
3. DISMISSES with prejudice all state claims as time barred;
4. DISMISSES with prejudice the first cause of action against Sgt. Smith;
5. DISMISSES with prejudice all claims premised on California Penal Code sections 118.1, 149 and 182;
6. DISMISSES with prejudice the second cause of action;
7. DISMISSES with prejudice the third cause of action;
8. DISMISSES with prejudice the sixth cause of action; and
9. DIRECTS the Court's clerk to enter judgment against plaintiff Rolinzo Flowers and in favor of defendants Fresno County Sheriff Margaret Mims, Fresno County Sheriff's Department Sgts. Kathy Carreiro, John Golden and Arley Terrance, and Fresno County

Sheriff's Department Deputy Robert Buenrostro.

Except to the extent dismissed above, the complaint's remaining claims are pursuant to section 1983 only and limited to the first (excessive force), fourth (equal protection), and fifth (policy and custom) causes of action. The remaining defendants are the County, Deputies Hushaw, Buie and Swiney, and Sgt. Smith. As such, this Court ORDERS the County, Deputies Hushaw, Buie and Swiney, and Sgt. Smith, no later than April 30, 2009, to file and serve their response to the remaining claims.

IT IS SO ORDERED.

**Dated:　　April 15, 2009**　　　　　　　　　　　　/s/ Lawrence J. O'Neill
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE